# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RODGER N. BUTLER,

      Petitioner,

v.                                    Case No. 3:17-cv-464-J-32PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I.    Status

Petitioner, an inmate of the Florida penal system, initiated this case by filing a pro se Petition for Writ of Habeas Corpus Under 28 U.S.C. § 2254. Doc. 1. He is challenging a state court (Columbia County, Florida) judgment of conviction for six counts of sexual battery by a person in familial or custodial authority and one count of lewd or lascivious molestation of a child. Id. at 1. He is currently serving a life term of incarceration. Id. Respondents have responded. See Doc. 28; Response.[1] Petitioner replied. Doc. 32. This case is ripe

---

[1] Attached to the Response are numerous exhibits. See Doc. 16-1 through Doc. 16-26. The Court cites to the exhibits as "Resp. Ex."

for review.

## II.    <u>Governing Legal Principles</u>

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert.</u> <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. <u>See</u> <u>Marshall v. Sec'y Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 100 (2011). When the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different

2

grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at

75 ("The gloss of clear error fails to give proper
deference to state courts by conflating error (even clear
error) with unreasonableness."); Williams v. Taylor,
529 U.S. 362, 410 (2000) ("[A]n unreasonable
application of federal law is different from an incorrect
application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal

citations modified).

### B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective

assistance of counsel. That right is denied when a defense counsel's

performance falls below an objective standard of reasonableness and thereby

prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam)

(citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v.

Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a

person must show that: (1) counsel's performance was outside the wide range of

reasonable, professional assistance; and (2) counsel's deficient performance

prejudiced the challenger in that there is a reasonable probability that the

outcome of the proceeding would have been different absent counsel's deficient

performance. Strickland, 466 U.S. at 687.

There is no "iron-clad rule requiring a court to tackle one prong of the

Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir.

2010). Since both prongs of the two-part Strickland test must be satisfied to

4

show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't

of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

## III.   **Evidence at Trial**

Petitioner raises twelve grounds for relief. To add context to these issues, the Court summarizes the evidence produced at trial. Marsha Butler, the victim's mother, testified she and Petitioner were married from 2002 until 2009. Resp. Ex. F at 36-37. Marsha explained she and Petitioner had two children together and she also had a child from a previous marriage, the victim E.M. Id. Marsha testified that E.M. lived with her and Petitioner during the duration of their marriage. Id. According to Marsha, during their marriage, she worked at least 48 hours a week as an emergency room nurse, and Petitioner worked intermittently until 2005 when Petitioner became the fulltime contractor working on building their home. Id. at 41. She stated that around that time, E.M. began homeschooling at the age of 13, so she could help with childcare and assist Petitioner with work on the new house. Id. at 42. According to Marsha, Petitioner always wanted E.M. with him when he went to the construction site, and he refused to take another child to help. Id. at 44. Marsha explained that during the course of her marriage to Petitioner, she was aware of only one occurrence of inappropriateness between E.M. and Petitioner, in which E.M. told Marsha that Petitioner showed E.M. a "sexual toy" that Marsha kept in her drawer. Id. at 47. Marsha explained that she confronted Petitioner about his

6

actions, and Petitioner advised that he showed her the toy to "enlighten[ ] [E.M.] on sexuality" and "broaden her horizons," to which Marsha replied it was not Petitioner's job to "sexually educate a 13 year old girl." <u>Id.</u> at 47-48.

Marsha stated that after she divorced Petitioner, E.M. still had overnight visitations with Petitioner, but the visits stopped after Petitioner drove E.M. from Tennessee back to Florida without Marsha's permission. <u>Id.</u> at 63-65. When E.M was six weeks away from her 18th birthday, Marsha found sexually explicit text messages on E.M.'s phone between E.M. and her boyfriend Travis. <u>Id.</u> at 67. When Marsha confronted E.M. about the messages, E.M. informed Marsha that Petitioner had sexually abused her. <u>Id.</u> at 68-69. Marsha explained she contacted police immediately and Detective Katina Dicks interviewed her and E.M. <u>Id.</u> at 70.

E.M.'s stepbrother, J.B., testified he lived with his father (Petitioner) and Marsha while they were married. <u>Id.</u> at 77. J.B. testified that one day when he was between the ages of 11 and 13, he walked to the building site to see his father and E.M. once he got home from school. <u>Id.</u> at 79. He explained that he walked into the house and down the hallway, and when he looked into the master bedroom, he saw E.M "on her knees and [his] dad just standing there." <u>Id.</u> at 79. He explained that E.M. was kneeling directly in front of Petitioner and had her hands on his zipper. <u>Id.</u> J.B. stated he quickly walked out of the house and his father ran after him, telling J.B. that his zipper was stuck and

E.M. was helping him fix it. Id. at 81.

At the time of trial, E.M. was 18 years old. Id. at 99. E.M. testified that she and her mother began living with Petitioner when E.M. was 6 years old. Id. at 100. When E.M. was 13, she began homeschooling, so she could help babysit her younger brother and help Petitioner as he built their new house. Id. at 103-06. According to E.M., it was at that time, when she was 13, that Petitioner began sexually abusing her. Id. at 109-10. She explained that the first time he abused her, she and her brother were sleeping in their bunk beds when Petitioner came in and began touching her vagina over her clothing. Id. at 111. She stated that in the following months, Petitioner continued to abuse her in this way, but the abuse progressed, and he began touching himself and eventually put his hand in her underpants. Id. at 113. E.M. testified that when she was 14 years old, she and Petitioner were "wrestling" in the living room when Petitioner held her down, took off her pants and underwear, and penetrated her vagina with his penis. Id. at 115. After the incident, Petitioner told her he would kill himself if she told anyone. Id. at 116.

E.M. explained that Petitioner continued to abuse her by vaginal or oral penetration until she was 17 years old. Id. When E.M. was between the ages of 14 and 15, he abused her in this manner "at least once or twice a week." Id. at 117. She further explained that when she was between the ages of 15 and 17, Petitioner abused her through vaginal or oral penetration "at least three or four

8

times a week." Id. at 118. She stated she never told anyone about the abuse because she believed Petitioner would kill himself and he was the only father figure in her and her siblings' lives. Id. at 119-20. However, she recalled that on one occasion, her brother J.B. walked in while she was performing oral sex on Petitioner, but she's never spoken to her brother about what he saw. Id. at 120-21.

According to E.M., Petitioner would force E.M. to perform sexual acts by bribing her with material items (i.e., clothing, bags, pets) or as a form of punishment. Id. at 122-23. She stated that after her mother and Petitioner's divorce, E.M. continued to visit Petitioner, so she could help care for her younger siblings. Id. at 123-24. E.M. stated Petitioner continued to sexually abuse her during this time. Id. at 124. E.M. explained the abuse stopped when she stopped visiting Petitioner around her 17th birthday and when she started dating Travis. Resp. Ex. G at 132. E.M. stated that her mother found sexually explicit text messages between E.M. and Travis and confronted E.M. about not being honest. Id. at 136. During this conversation, E.M. told her mother "everything" about Petitioner's abuse. Id. According to E.M., her mother immediately called police. Id. at 137. E.M. also testified Petitioner had a distinguishing "scar" or skin tag on the top of his penis. Id. at 121.

E.M. testified that police asked her to wear a recording device and have a conversation with Petitioner the next time he comes over to pick up her siblings.

9

<u>Id.</u> at 137. E.M. complied and recorded a scripted conversation with her and Petitioner regarding her mother calling the police about Travis' inappropriate text messages, and that she was scared Travis would tell the police about Petitioner's abuse because she disclosed the abuse to Travis. <u>Id.</u> at 146. The recording was played for the jury. <u>Id.</u> at 148-49. During the conversation, Petitioner is heard pleading with E.M. to please not tell anyone about their sexual activities because it would "destroy" him. <u>Id.</u> at 148-49. When E.M. tells Petitioner she was just a child and he did not have to do that to her, Petitioner responds, "You liked that, too." <u>Id.</u> at 147.

Detective Dicks testified she was the lead detective on Petitioner's case and arranged for the controlled conversation to occur. <u>Id.</u> at 168-69. She explained that following the controlled conversation, Petitioner was immediately transported to the police station where she conducted an interview of Petitioner. <u>Id.</u> at 169. Following the reading of Petitioner's <u>Miranda</u>[2] rights, the Detective interviewed Petitioner. <u>Id.</u> at 177. He denied ever abusing E.M. and he disclosed he had a distinguishing scar on his penis. <u>Id.</u> at 177. He stated that E.M. knew about the scar because it was "common knowledge" and that everyone in his family knew about the scar. <u>Id.</u> at 178.

Petitioner testified at trial that he was really surprised that E.M.

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

confronted him with such allegations on the night he was arrested. Id. at 212-13. He admitted that in December 2009, he did have sexual contact with E.M., but he did not initiate the contact, nor did he participate in it willingly. Id. at 214. He stated he and E.M. were laying on the couch watching a movie and he fell asleep. Id. He testified he then woke up to "some sensation down there" and saw E.M. sitting up with her hand down his pants. Id. He said he got up and asked what she was doing, and she replied that she was "helping" him. Id. He stated that was the only time he ever had any inappropriate contact with her but she offered sexual favors "once or twice a month" thereafter. Id. at 216. On cross-examination, Petitioner admitted that during his police interrogation, he did not inform police about the December 2009 incident. Id. at 220.

## IV.   **Petitioner's Claims and Analysis**

### a. Ground One

Petitioner argues his trial attorney was ineffective for failing to move to suppress certain evidence from the initial investigation of the crimes and primarily challenge the manner in which he was arrested. Doc. 1 at 6-14. Though not a picture of clarity, he appears to argue that E.M.'s wire recording of their conversation amounted to a police interrogation, violating his Fifth, Sixth, and Fourteenth Amendment rights; and that his subsequent arrest was violent as he was "confronted by officers, guns pointed at him and physically attacked, handcuffed and placed in backseat of police car." Id. at 8.

Petitioner asserts he raised this claim as ground thirteen of his Florida

Rule of Criminal Procedure 3.850 motion for postconviction relief. Doc. 1 at 6;

Resp. Ex. HH at 88-92. The trial court denied the claim, finding in pertinent

part as follows:

> The Defendant alleges that counsel was ineffective for failing to move for suppression of certain evidence from the initial investigation of the crimes committed. Motion at 37. The Defendant lists eleven concerns that he has with evidence that came from the initial investigation. Motion at 37-41. Each of the Defendant's claims is subjective opinion of inadmissibility. Many of the claims relate to the manner in which the Defendant was arrested. The Defendant does not appreciate that he was handcuffed and taken into custody by police, as the Defendant labels the arresting officer as an "attacker." Motion at 39. The Defendant claims that police instilled fear in him because he was arrested with a "display of guns drawn and pointed at [the Defendant]." Motion at 38. The Defendant simply describes a regular arrest and investigation and points out no facts of misconduct; certainly no misconduct that would result in a suppression of evidence.

> Many other claims made in this section of the instant motion relate to issues already discussed in this order. The Defendant again refers to his displeasure with the victim confronting the Defendant and asking him questions while wearing a recording device. This issue has been resolved as the recording was made for the purpose of a police investigation as explained in Argument One of this order. The Defendant also revisits the issue of the skin tag which has been thoroughly discussed throughout this order. Motion at 40. Finally, the Defendant makes several claims that the investigator was biased towards the victim, including claims such as, the investigator acted "with

12

> premeditated agenda for [the victim] to deliberately elicit self-incrimination from [the Defendant]." Motion at 38. These claims are meritless as this is the very job of the police, to investigate suspects for crimes and illicit information from the suspect as to the acts committed.

Resp. Ex. II at 205. The First District Court of Appeal issued a written opinion affirming the trial court's denial of this claim.[3] Resp. Ex. LL. To the extent that the First DCA affirmed the denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

At Petitioner's sentencing hearing, the trial court heard argument on a pro se motion alleging various claims of ineffective assistance of counsel.[4] Resp. Ex. D at 15. During the hearing, Petitioner argued that counsel should have moved to suppress the audio recording between him and E.M. because he felt it violated his Fourth Amendment rights and his "right to privacy." Id. at 15. Trial counsel responded that he considered filing a motion to suppress but

---

[3] In its written opinion, the First DCA "affirmed the post-conviction order without additional comment, except for [Petitioner's] second claim." Resp. Ex. LL. As to ground two, the court reversed and remanded with specific instructions that the trial court either conduct an evidentiary hearing or provide the appellate court with record attachments refuting that claim. Id.

[4] The trial court was initially reluctant to hear any argument on Petitioner's pro se claims on ineffective assistance during his sentencing hearing, but trial counsel insisted that he respond to Petitioner's complaints on the record. Resp. Ex. OO at 14.

determined that such motion would not have been successful because the recording was made at the home of his ex-wife rather than Petitioner's home and the type of recording was similar to recordings made in routine controlled drug buy cases. Id. As such, trial counsel felt that there was no basis for filing a motion to suppress because the recording was made during the course of a police investigation and they clearly had E.M.'s consent to participate in the controlled conversation. Id. at 16.  He explained that he discussed the issue with Petitioner, explained he could not suppress it and that despite any objection, the court would have overruled it. Id. Indeed, at trial, trial counsel did object to the introduction of the recording, however, the objection was overruled because the recording was created during a police investigation. Resp. Ex. F at 138-39.

Thus, after a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts given the evidence presented in the state court proceedings. Ground One is due to be denied.

### b. Ground Two

Petitioner argues the trial court failed to enter a signed written order denying his motion for new trial in violation of Florida Rule of Appellate Procedure 9.020(h)(1). Doc. 1 at 16. He avers the trial court instead erroneously

orally denied the motion during his sentencing hearing; and he appears to allege that the failure to enter a written order means his criminal conviction is not final and is thus now "dischargeable." Id. He also argues that trial counsel was ineffective for failing to procure a signed written order of denial, and that the recusal of the Honorable Paul Bryan prior to the entry of a signed written order of denial further violated his due process rights. Id. at 19.

In December 2015 and again in January 2016, Petitioner filed postconviction motions with the trial court arguing that he is entitled to a signed written order disposing of his motion for new trial. Resp. Ex. RR. The trial court denied the motions, finding the following:

> In the instant motions, the Defendant alleges that he is entitled to "a signed written order pursuant to Florida Statute 924.065(1)" on his motion for new trial, which was heard on June 6, 2011, just prior to sentencing. The Defendant further maintains that the Honorable Paul S. Bryan, trial judge, should enter this required written order. Judge Bryan, however, was recused from this case and any matter in which the Defendant is involved; accordingly, His Honor cannot legally enter any orders in this case or any case involving the Defendant. Moreover, the Defendant is not legally entitled to the relief he seeks – that is, a signed, written order on his June 6, 2011, motion for new trial.
>
> In its entirety, section 924.065(1) provides:
>
> Immediately after denial of a motion for a new trial or a motion in arrest of judgment, the court shall dictate the denial to the court reporter and sentence the defendant.

15

The defendant may file notice of appeal following denial of the motion and sentencing. Upon filing of notice of appeal, the court shall set the amount of the appeal bond if the defendant is entitled to bail. The clerk shall prepare a certificate setting forth the filing and approval of the supersedeas bond, and the certificate shall be sufficient authority for release of the defendant.

Nothing within this section mandates that a written order must be entered on a motion for new trial. In fact, the explicit language of the statute indicates that an oral order by the trial judge is appropriate: "the court shall dictate the denial to the court reporter." That is precisely what occurred in this case. Towards the end of the June 6, 2011, sentencing hearing, after the various pro se motions were argued and addressed, the pending motion for new trial was addressed:

THE COURT: ... Is there any legal cause to show why sentence cannot now proceed? You do have a motion for new trial, do you not Mr. Hunt, yourself?

[TRIAL COUNSEL]: Yes, sir, I do. The -- raised from the standard grounds that the verdict was contrary to the evidence. Contrary to the law. I don't wish to be heard further about that. It alleged that the Court erred in denying the motions for judgement of acquittal, and also in overruling my objection to the admission of the recording between the Defendant on the one hand and [E.M.] on the other, but we've already addressed that at some length, so I don't wish to be heard.

I also did raise the issue of permitting Stacy McCrae to serve on the

16

jury, but I'll acknowledge I did not perserve [sic] that with an objection and I did not challenge Stacy McCrae.

THE COURT: And you had specifically discussed that with your client and were given time to do that?

[TRIAL COUNSEL]: Yes, sir.

THE COURT: All right. Anything else?

[TRIAL COUNSEL]: And at the --

THE COURT: On the Motion for New Trial?

[TRIAL COUNSEL]: -- at the time my client actually told me he wanted her to be on the jury because he knew the jailer was a really nice person and Benjamin was a really nice person, so therefore he thought she came from a -- he came from a good family, that she must be a good person, so, I left her on.

THE COURT: Anything else on motion for new trial?

[TRIAL COUNSEL]: No, sir.

THE COURT: Does the State wish to be heard on the official or the attorney filed Motion for New Trial?

[THE STATE]: We would just say that in terms of the verdict being against the weight of the evidence, we would say the evidence speaks for itself. The denial of the objections. Judge, we would rely on what was presented at trial. And as to that juror

> serving, you know, it's just hindsight now, you know, saying, well, I guess I wish I wouldn't have had that person. I don't see a valid ground there.
>
> THE COURT: The Motion for New Trial filed by Mr. Hunt is denied on all basis raised so I've now denied the Motion for New Trial however it may be styled. There some that are pro se, there are some that are Mr. Hunt's. They're all denied on all counts, on all basis.

Sentencing Hearing transcript at 50-51. As the above passage illustrates, the sentencing judge, after hearing the arguments pertaining to the motion for new trial, rendered an oral ruling that was dictated to the court reporter and appropriately transcribed. And immediately following this ruling, the trial court sentenced the Defendant. This was in accordance with the demands of section 924.065(1).

The Defendant's reliance on "Rule 9.020(i)(l) App. P.," which he claims is applicable and would mean that the oral ruling on the motion for new trial "SHALL NOT BE DEEMED RENDERED -UNTIL THE FILING OF A SIGNED WRITTEN ORDER" is completely misplaced. Defendant's Motion for Reversal of Case for New Trial due to Court Error Unrecoverable at 3. This appellate rule, Florida Rule of Appellate Procedure 9.020, does not mandate that an oral ruling on a pre-sentence motion for new trial is not effective or rendered until it is reduced to writing. The Defendant misreads and misapplies this rule.

Finally, even if the Defendant were seeking a ruling on the seemingly outstanding written motion for new trial filed by his trial counsel post-trial, that motion was deemed abandoned when the Defendant sought to appeal his convictions and sentences-albeit, a belated appeal given the procedural posture of this

> case. See e.g., Johnson v. State, 154 So. 3d 1184 (Fla.
> 4th DCA 2015) ("when appellant filed a notice of
> appeal, while his second Motion for New Trial was
> pending before the trial court, he abandoned the motion
> and divested the trial court of jurisdiction to rule on it").
> This case, like the Johnson case, predates enactment of
> the amended Rule 9.020(i), which eliminates the
> language providing that postjudgment motions are
> abandoned upon the filing of a notice of appeal. As such,
> that post-trial and sentence motion for new trial was
> deemed abandoned when the Defendant sought to and
> successfully did appeal his convictions and sentences,
> and this Court lacks jurisdiction to render a ruling on
> the motion.

Resp. Ex. RR. Petitioner then appealed the trial court's order by filing a petition

for writ of certiorari with the First DCA. Resp. Ex. SS. The First DCA per

curiam denied the petition without a written opinion. Resp. Ex. TT.

To the extent that the First DCA affirmed the denial on the merits, the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. In doing so, the Court notes

that during Petitioner's sentencing hearing Petitioner filed a pro se construed

motion for new trial and trial counsel also filed a motion for new trial. Resp. Ex.

D at 51. After hearing argument from the state, trial counsel, and Petitioner,

the trial court denied the motions for new trial on the record. Id. The trial court

then sentenced Petitioner to a life term of incarceration on count one and a

concurrent 631.5 month-term of incarceration on counts two through six. Id. at

66. Petitioner then sought a direct appeal and the First DCA per curiam

affirmed his judgment and sentence without a written opinion. Resp. Ex. M. Petitioner sought review with the Florida Supreme Court, however, the court declined jurisdiction. Petitioner's judgment and sentence are final, and the trial court was not required to enter a written order on his motions for new trial. As such, the state court's adjudication of this claim was not contrary to clearly established federal law nor was it an unreasonable determination in light of the facts presented in the state court proceeding. Further, as to any claim that counsel was ineffective for failing to procure a signed written order on Petitioner's motion for new trial, Petitioner cannot demonstrate deficient performance or prejudice from such alleged deficiency. Ground Two is due to be denied.

### c. Ground Three

Petitioner argues his Sixth Amendment right to conflict-free counsel was violated at the hearing on his pro se motion for new trial based on ineffective assistance of trial counsel, and at sentencing thereafter. Doc. 1 at 20-23. Petitioner, with the help of appellate counsel, raised this claim as "Issue I" during his direct appeal. Resp. Ex. J at 10. In his initial brief, Petitioner noted that at the beginning of Petitioner's sentencing hearing, Petitioner filed a pro se motion for new trial containing arguments regarding trial counsel's alleged ineffectiveness at trial. Id. at 11. He explains that when the trial court heard argument on the motion, "[d]efense counsel was placed in a position of testifying

20

in direct conflict to [Petitioner's] allegations and interests"; and "was placed in an adversary position relative to . . . his client." Id. at 11-12. As such, according to Petitioner, Petitioner was entitled to conflict-free counsel to represent him during a critical stage of his proceedings. Id.

In its answer brief, the state argued this argument was not preserved for appellate review because Petitioner never requested the trial court to appoint conflict-free counsel for purposes of sentencing. Resp. Ex. K at 12. It also argued that even assuming the claim was preserved, it is without merit because none of the claims Petitioner asserted in support of his claim that counsel was ineffective were viable, and thus, he was unable to show that there was an actual conflict of interest warranting substitution of counsel. Id. at 22.

The state addressed each of the claims Petitioner asserted to support his allegation that trial counsel was ineffective at trial. Id. at 15-22. It first argued trial counsel had no legal basis to challenge the recorded conversation between Petitioner and E.M.; that Petitioner's current challenge to his pretrial detention is now moot; and that trial counsel had no basis to challenge Petitioner's custody revocation of J.B. because it was unrelated to the criminal case. Id. at 17. The state also noted trial counsel had no basis to challenge an unrelated domestic violence case, or to challenge the alleged unlawful entry into Petitioner's home because the state did not present any evidence obtained from his home during his trial. Id. at 18. It further explained trial counsel was not ineffective for

failing to ensure Petitioner's presence during a brief pretrial status conference; and counsel was not ineffective for failing to subpoena Marsha's father as a witness because Marsha's own sexual abuse was irrelevant. Id. The state also noted that trial counsel explained during the sentencing hearing that he made a tactical decision to not present evidence of E.M.'s other sexual partners or to pursue DNA evidence of other individuals. Id. Finally, the state noted that trial counsel testified at the sentencing hearing that he had no basis to object to Detective Dicks' testimony at Petitioner's bond hearing. Id. at 22. Upon consideration of these arguments, the First DCA per curiam affirmed Petitioner's judgment and sentence without a written opinion. Resp. Ex. M.

To the extent that the First DCA affirmed the denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. A true conflict of interest must be actual and not merely potential or hypothetical. Cuyler v. Sullivan, 446 U.S. 335, 350 (1980). The mere possibility of a conflict is insufficient and must be based on a showing that counsel has interests inconsistent with the defendant's and that the conflict adversely affected the lawyer's performance. Both prongs of this test—actual conflict and adverse effect on counsel's performance—must be met. See Buenoano v. Singletary, 74 F.3d 1078, 1086 (11th Cir. 1996); Smith v. White, 815 F.2d 1401, 1404 (11th Cir. 1987). Contrary to Petitioner's contentions, his disagreement over whether counsel properly prepared for trial

and his unhappiness with the outcome of trial do not create an actual conflict or demonstrate the type of prejudice requiring the appointment of new counsel. Based on trial counsel's responses to each of Petitioner's complaints at his sentencing hearing, the trial court concluded that counsel acted reasonably.[5] After reviewing the record, the Court finds the state court's adjudication of this claim was not contrary to clearly established federal law nor was it an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Ground Three is due to be denied.

### d. Ground Four

Petitioner argues his trial attorney was ineffective for failing to investigate Petitioner's "probable cause affidavit" and move for dismissal at or before Petitioner's arraignment. Doc. 1 at 25. It appears Petitioner is challenging the detective's search warrant affidavit. Petitioner raised this claim as ground fourteen in his Rule 3.850 motion. Resp. Ex. II at 205. The trial court denied the claim as follows:

> The Defendant alleges that counsel was ineffective for failing to "be diligent and read and confirm the contents of the probable cause affidavit." Motion at 42. The Defendant argues that if counsel had better investigated the probable cause affidavit, then counsel would have found the probable cause affidavit to be "fraudulent and legally insufficient." The Defendant then points out areas in the probable cause

---

[5] The trial court's inquiry here was no different than that in a Nelson v. State, 274 So. 2d 256 (Fla. 4th DCA 1973).

affidavit where he believes there are omissions or mistakes. Motion at 42-47. None of these allegations raise valid claims of legal merit.

First, the Defendant was convicted of the crimes in this case based on the official charging document from the State, which is the Information, and not the probable cause affidavit. Additionally, the probable cause affidavit very well could have contained mistakes, omissions, or other insignificant errors. However, the affidavit was more than sufficient for the State to follow-up with an investigation and subsequent filing of charges through an Information by which the Defendant was ultimately charged, tried, and properly convicted. See attached Probable Cause Affidavit. Regardless of any concerns the Defendant may have, (most of which are the Defendant adding his own thoughts as to what other irrelevant information he would like to be contained within the probable cause affidavit), the probable cause affidavit contained all the information necessary to charge the Defendant with the seven counts of sexual battery and lewd or lascivious molestation. The probable cause affidavit includes specific details for pages about the Defendant fondling the victim at age 13, having sexual intercourse with the victim, forcing the victim to perform oral sex acts, and forcing the victim to manually stimulate the Defendant. The affidavit states that the victim would cry when the Defendant had sex with the victim, that the victim was forced to watch pornographic material to learn how to perform oral sex on the Defendant, and that on a few occasions, the Defendant used arm and leg restraints on the victim while performing sexual acts. The affidavit provides that the Defendant forced sex acts upon the victim hundreds and hundreds of times. See attached. It is adequate to say that the probable cause affidavit was sufficient to serve its purpose. Counsel cannot be deemed ineffective for failing to discern what the Defendant claims are errors in that affidavit. Again, the Defendant was not prejudiced as he was ultimately found guilty based

upon the evidence presented against him at trial.

Resp. Ex. II at 205-06 (citing Resp. Ex. II at 298-301). The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. LL. To the extent the First DCA addressed this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

As the state court noted, the information in the subject affidavit had no impact on the jury's verdict. Rather, this affidavit was executed in support of a search warrant to obtain a photograph of Petitioner's genitals for purposes of confirming any distinguishing marks and such photographs were not presented at trial. Resp. Ex. II at 301. As such, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Four is due to be denied.

### e. Ground Five

Petitioner contends his trial counsel was ineffective for failing to move for a Richardson[6] hearing when the state committed a discovery violation by filing an Amended Information, and for failing to ask that a continuance be charged

---

[6] Richardson v. State, 246 So. 2d 771 (Fla. 1971).

the state, so Petitioner would not have to waive his speedy trial rights by asking

for a continuance. Doc. 1 at 62. Petitioner raised a similar claim in his Rule

3.850 motion.[7] Resp. Ex. HH at 74. The trial court denied the claim as follows:

> The Defendant alleges that counsel was
> ineffective because counsel moved for a continuance
> following the State filing an amended Information.
> Motion at 23. The Defendant has failed to point out any
> deficiency by his counsel in this claim. The State is
> permitted to file an amended Information. It would
> then be far more dangerous for defense counsel to rush
> to trial while unprepared, rather than filing a motion
> to continue in order for defense counsel to have
> adequate time to prepare a reasonable defense on
> behalf of the Defendant.

Resp. Ex. HH at 199. The First DCA per curiam affirmed the trial court's denial

without a written opinion. Resp. Ex. LL. To the extent the First DCA addressed

this claim on the merits, the Court will address the claim in accordance with

the deferential standard for federal court review of state court adjudications.

"A Richardson hearing is held to determine whether the State committed

a discovery violation in contravention of the Florida Rules of Criminal

Procedure and, if so, whether the non-compliance resulted in prejudice to the

defendant's ability to prepare for trial." Cisneros v. McNeil, No. 8:05-cv-762-T-

27TGW, 2008 WL 1836368, at *5 (M.D. Fla. Apr. 23, 2008). A discovery violation

---

[7] Petitioner also raised a similar claim in his petition alleging ineffective assistance of appellate counsel under Florida Rule of Appellate Procedure 9.141. Resp. Ex. P at 74. Here, Petitioner clearly challenges trial counsel's effectiveness, so the Court refers to Petitioner's Rule 3.850 claim.

is a question of state law, and thus, the Court defers to the state court's determination that trial counsel was not deficient for failing to object to the Amended Information. See Huddleston v. Sec'y Dep't of Corr., No. 8:16-cv-76-T-02AAS, 2019 WL 339225, at *5 (M.D. Fla. Jan. 28, 2019) (holding that "[w]hile the issue before the court is one of ineffective assistance, a question cognizable on federal habeas review, the underlying issue of whether a discovery violation occurred under Florida law and whether counsel should have objected and moved for a Richardson hearing is a question of state law" that binds the court). In any event, to support his contention that the state committed a discovery violation, Petitioner merely argues the Amended Information resulted in counsel moving for a continuance. That argument does not demonstrate prejudice under Strickland. In sum, upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. Ground Five is due to be denied.

### f. Ground Six

Petitioner contends his trial counsel was ineffective for failing to strike a biased juror – Ms. McRae. Doc. 1 at 65. Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. HH at 75. The trial court denied the claim as follows:

> The   Defendant   alleges   that   counsel   was

ineffective in voir dire as it relates to the selection of the juror named Stacy McRae. The Defendant claims that McRae stated during voir dire: "Abuse of a child, any kind of abuse of a child." Motion at 24. The context is not entirely clear, but it is clear that McRae did in fact state during voir dire that she would not judge people but look at the facts. <u>See</u> attached Jury Selection transcript at 43. Most importantly, however, is how McRae was finally selected to be a member of the jury. The Court addressed each juror individually. When the Court asked the State and defense counsel specifically about selecting McRae to serve as a member of the jury, defense counsel responded by saying, "[l]et me confer one more time." <u>See</u> attached Jury Selection transcript at 73. At which point defense counsel discussed with the Defendant the juror selection. It is not clear what exactly was said between counsel and the Defendant, but when defense counsel finished conferring directly with the Defendant, defense counsel stated: "Defense accepts the jury." The Court follows up by asking defense counsel again, "[a]nd you had a conference with your client just then?" to which defense counsel answered, "Yes, I did." <u>See</u> attached Jury Selection transcript at 73. It is clear that the choice to add McRae to the jury was discussed directly with the Defendant and the Defendant and defense counsel found McRae to be a satisfactory choice for the jury.

Resp. Ex. HH at 199. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. To the extent the First DCA addressed this claim on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.

During jury selection, it is not clear if Ms. McRae said anything about her opinions on the nature of Petitioner's charges. Resp. Ex. E at 26. However, Ms. McRae did advise the parties that her son is Benjamin McRae, III, and he

28

worked at the Columbia County Jail. Id. at 26. She further stated that this fact would not affect her evaluation of the witnesses or evidence. Id. During the parties' cause challenges, the state did not challenge the selection of Ms. McRae and after conferring with Petitioner, trial counsel advised that the "[d]efense accepts the jury." Id. at 73. At Petitioner's sentencing hearing, Petitioner, for the first time, argued in a pro se motion that he was entitled to a mistrial because Ms. McRae was a biased juror who deliberated in his case. Resp. Ex. D at 7-8. In support of his claim, Petitioner argued that prior to his trial Ms. McRae's son, Benjamin McRae, always treated him nicely in the jail, and that after the verdict, his demeaner changed and thus Petitioner was convinced that Ms. McRae improperly spoke to her son about the case. Id. However, Petitioner admitted that he told Benjamin McRae about his pending case and openly spoke about the trial while he was in the jail. Id. at 9. Trial counsel then advised the trial court that when they selected Ms. McRae as a juror, he and Petitioner were aware that her son worked at the jail. Id. at 8. Trial counsel specifically recalled conferring with Petitioner about Ms. McRae's son, and based on that conversation, counsel decided not to challenge her. Id. at 11. Indeed, trial counsel advised that "at the time [Petitioner] actually told me he wanted her on the jury because he knew the jailer was a really nice person, so therefore he thought . . . he came from a good family, that she must be a good person, so I left her on." Id. at 50.

29

Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. See Price v. Sec'y Dep't of Corr., 558 F. App'x 871, 872-73 (11th Cir. 2014) (holding that it was not unreasonable application of clearly established federal law for the Florida courts to conclude that defendant could not argue that counsel had been ineffective for failing to strike a juror that the defendant had approved); Kelley v. State, 109 So. 3d 811, 812 (Fla. 1st DCA 2013) ("Thus, it follows that a defendant who . . . personally affirms his acceptance of the jury panel will not be heard to complain in a postconviction motion that his counsel was ineffective for allowing a biased juror to serve on his jury."). Ground Six is due to be denied.

## g. Ground Seven

Petitioner contends his trial attorney was ineffective for failing to present the photographs and drawings of Petitioner's penis to challenge E.M.'s credibility regarding the location of his skin tag. Doc. 1 at 68-69. Petitioner raised a similar claim in his Rule 3.850 motion.[8] Resp. Ex. HH at 76. The trial

---

[8] In his Rule 3.850 motion, Petitioner also argued that the photographs were Brady material. Resp. Ex. HH at 76. Here, however, Petitioner does not cite to or argue this claim under Brady v. Maryland, 373 U.S. 83 (1963). Doc. 1 at 69-71.

court denied the claim, finding in relevant part the following:

> The Defendant alleges that defense counsel was "objectively unreasonable in performance to not correct the State's improper burden shifting and non-admission of 3 pieces of material evidence favorable to the Defendant, in trial." Motion at 25. The Defendant argues that pictures taken of his penis show that the skin tag on the Defendant's penis is in a different location from where the victim identified the skin tag in the victim's drawing made for the investigating officer. The Defendant claims that the pictures of his own penis are <u>Brady</u> information and the State was wrong in not entering those photos into evidence.
>
> The Defendant misunderstands the meaning of <u>Brady</u> evidence.[] The pictures of the Defendant's penis, along with the pictures that the victim drew of the Defendant's penis were all turned over to the defense during discovery. <u>See</u> attached portions of discovery. Therefore, the State did not hide, suppress, or fail to disclose any of the evidence to which the Defendant refers. Furthermore, just because the victim may have failed to identify the precise location of the skin tag on the Defendant's penis does not mean that the skin tag does not exist, or that the Defendant is innocent of the crimes. The picture of the penis in no way absolves the Defendant of the crimes committed. The significance of the evidence was the victim's knowledge of a skin tag, and not the exact location of the skin tag on the Defendant's penis. If the Defendant was concerned about the penis pictures not being admitted into evidence by the State, the defense could have had those pictures entered. However, the defense's strategy was not actually to show those pictures to the jury, but instead, to cross-examine the investigator as explained in Argument Two, Claim 8 of this order. Defense counsel discussed with the investigator, during cross-examination, the drawing of the skin tag made by the victim. Then, defense counsel showed the picture of the Defendant's penis to the

> investigator, and defense counsel was able to elicit from
> the investigator that there may be some discrepancy in
> the explanation by the victim as to the location of the
> skin tag on the Defendant's penis, versus the actual
> location of the skin tag as depicted in the photograph.
> As such, defense counsel was able to present to the jury
> the issue of the misidentification of the location of the
> skin tag without actually entering the photo of the
> penis into evidence. Therefore, no prejudice could have
> occurred.

Resp. Ex. HH at 199-200. The First DCA per curiam affirmed the trial court

denial without a written opinion. Resp. Ex. LL. Upon thorough review of the

record and the applicable law, the Court finds that the state court's decision to

deny Petitioner's claim is neither contrary to nor an unreasonable application

of Strickland, and it is not based on an unreasonable determination of the facts

given the evidence presented to the state court. Ground Seven is due to be

denied.

### h. Ground Eight

Petitioner argues his trial attorney failed to adequately argue a motion

for judgment of acquittal as to count seven – lewd and lascivious molestation.

Doc. 1 at 73-75. He raised this claim in his Rule 3.850 motion. Resp. Ex. HH at

160. The trial court denied the claim as follows:

> The Defendant alleges that defense counsel did
> not provide an adequate rebuttal to the State's
> argument against defense counsel's motion for
> judgment of acquittal, (JOA). Motion at 30. The State's
> response to defense counsel's motion for JOA includes:
> "And the evidence produced through the testimony of

[the victim] herself being 13 years of age and having the defendant touching her genitalia in her bed would constitute a prima facie case or prima facie showing of lewd or lascivious molestation." <u>See</u> attached Trial Transcript at 192. The Defendant argues that after the State responded to defense counsel's motion for JOA as to Count 7, stating: "defense counsel did not follow through correcting the prosecutor's statement which was erroneous; as the testimony of [the victim] fails to prove 'in a lewd or lascivious manner' - a requirement of the statute." Motion at 30.

The court in <u>Houghton v. Bond</u> held:

> With respect to the granting of a motion for directed verdict, such a motion should be considered by a trial court with extreme caution, because the granting thereof amounts to a holding that the non-moving party's case is devoid of probative evidence. <u>Perry v. Red Wing Show Co.</u>, 597 So. 2d 821 (Fla. 3d DCA 1992). A motion for directed verdict should not be granted unless the trial court, after viewing the evidence in the light most favorable to the nonmoving party, determines that no reasonable jury could render a verdict for the non-moving party. <u>Great S. Peterbilt, Inc. v. Geiger</u>, 616 So. 2d 1127 (Fla. 1st DCA 1993); <u>Miller v. City of Jacksonville</u>, 603 So. 2d 1310 (Fla. 1st DCA 1992). When considering a motion for directed verdict, the court must assume that the non-moving party's evidence, and all reasonable inferences therefrom, are true.

<u>Houghton v. Bond</u>, 680 So. 2d 514, 522 (Fla. 1st DCA 1996).

The Defendant fails to argue how the State's case was "devoid of probative evidence," (<u>Perry v. Red Wing</u>

> Show Co., at 821), or that "no reasonable jury could render a verdict for" the State. Great S. Peterbilt, Inc. v. Geiger, at 1127. Indeed, a jury did in fact find the Defendant guilty of the crimes as charged, including Count 7 of the Information, which the Defendant directly challenges here. Based upon the totality of the evidence provided by the victim this Court could not rule in favor of the Defendant's motion for JOA. The Defendant fails in the instant motion to provide any argument that [ ] could have been made by the defense that would have resulted in the granting of the defense's JOA motion, especially considering the standard as provided above for ruling on such a motion.

Resp. Ex. II at 202-03. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. LL. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court. The victim's testimony supported the trial court's denial of Petitioner's judgment of acquittal as to count seven. As such, Ground Eight is due to be denied.

### i. Ground Nine

Petitioner argues his trial counsel was ineffective for failing to adequately move for a judgment of acquittal as to counts one through six – sexual battery by person in familial or custodial authority. Doc. 1 at 77-81. Petitioner raised this issue in his Rule 3.850 motion. Resp. Ex. HH at 83. The trial court summarily denied the claim, finding the following in relevant part:

The Defendant alleges that counsel was ineffective for failing to move for acquittal at the end of trial. Motion at 32. The Defendant argues that he was prejudiced because the State had failed to meet its burden by failing to produce adequate evidence. The Defendant declares, "the State had failed to produce competent specific testimony from [the victim] stating vaginal penetration or union of herself with the Defendant; as would be required to infer guilt to the specifically articulated language; in the time periods; of count one for year 2007; count two for year 2008; count three for year 2009." Motion at 32. The Defendant continues by claiming that "the State had failed to produce competent specific testimony from [the victim] stating oral penetration or union of herself with the Defendant; as would be required to infer guilt to the specifically articulated language; in the time periods of count four for year 2007; count five for year 2008; count six for year 2009." Each and every claim is directly refuted by the record.

First, defense counsel did move for acquittal at the end of trial, which directly refutes the Defendant's claim that gives rise to the Defendant's argument that counsel was ineffective. The record reflects that counsel, at the end of trial, renewed all of his previously denied motions, including the motion for judgment of acquittal. See attached Trial Transcript at 233-234. Defense counsel reargued this motion as to all seven counts. Therefore, the instant claim is meritless. However, this Court will also review once again how the record refutes the Defendant's claims that the evidence did not support the charges against him.

The Defendant claims that the evidence put on by the State did not show that vaginal penetration had occurred for the time periods alleged in the charging document. The victim clearly testified, in no ambiguous terms, that vaginal penetration occurred. See attached Trial Transcript at 114-115. The victim then testifies that vaginal penetration continued from the time she

35

was 14 years of age until she was 17 years of age, at least once or twice a week and progressing to three or four times a week. See attached Trial Transcript at 116-117. The victim was born on December 16, 1992. This means the the victim turned 14 at the very end of 2006, and was the age of 14 for virtually all of 2007. Simple math shows that if vaginal penetration occurred weekly while the victim was 14 years of age, then sexual battery must have occurred weekly throughout the year of 2007. Thus, at age 15 the sexual battery continued throughout the year of 2008, and at age 16, the sexual battery continued throughout the year of 2009. This testimony provided by the victim directly refutes the Defendant's claim that vaginal penetration evidence was not produced through the victim's testimony for the years of 2007, 2008, and 2009.

So too does the record refute each of the Defendant's claims as to lack of testimony regarding oral penetration for the years of 2007, 2008, and 2009. The victim testifies that the oral penetration began around the age of 14 or 15. See attached Trial Transcript at 117. Either way, the Defendant [sic] turned 15 in the year 2007. The Defendant [sic] testified that these sexual acts continued until the age of 17. See attached Trial Transcript at 117. Therefore, as described in the previous paragraph, the years of 2007, 2008, and 2009 are specifically attested to. Therefore, the record directly and definitively refutes the Defendant's claims as to Argument Twelve.

Resp. Ex. II at 203-01. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. LL. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to deny Petitioner's claim is neither contrary to nor an unreasonable application of Strickland, and it is not based on an unreasonable determination of the facts

36

given the evidence presented to the state court. The victim's testimony supported the trial court's denial of Petitioner's judgment of acquittal as to counts one through six. As such, Ground Nine is due to be denied.

### j. Ground Ten

Petitioner asserts his trial counsel was ineffective for failing to suppress non-probative testimony from state witness J.B. Doc. 1 at 82 He also argues counsel should have prevented Detective Dicks from testifying to a "false statement about J.B." witnessing a sexual act, which amounted to a <u>Giglio</u>[9] violation because J.B. merely witnessed a "stuck zipper." Doc. 1 at 82. Petitioner raised this claim in his Rule 3.850 motion. Resp. Ex. HH at 72. The trial court summarily denied the claim as follows:

> The Defendant alleges that counsel was ineffective for failing to "move to suppress the non probative but prejudicial by conjecture testimony of witness J.B." Motion at 21. The Defendant argues that "counsel had grounds to suppress J.B. as his testimony held no competent eyewitness of a crime." Motion at 21.

> The Florida Supreme Court declared in <u>McDuffie v. State</u>:

> > "Section 90.402, Florida Statutes (2005), a provision within the Florida Evidence Code, provides that all relevant evidence is admissible except as provided by law. 'Relevant evidence is defined as 'evidence tending to prove or disprove a material fact' [but] ... '[r]elevant evidence is

---

[9] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence.' Sliney v. State, 944 So. 2d 270, 286 (Fla. 2006) (quoting §§ 90.401, 90.403, Fla. Stat.). '[P]roper application of section 90.403 requires a balancing test by the trial judge. Only when the unfair prejudice substantially outweighs the probative value of the evidence must the evidence be excluded.'" Alston v. State, 723 So. 2d 148, 156 (Fla.1998).

McDuffie v. State, 970 So. 2d 312, 326-27 (Fla. 2007). J.B. provided testimony that he saw the victim on her knees directly in front of the Defendant. See attached Trial Transcript at 79-80. This testimony substantiated the testimony given by the victim in two ways. First, it tended to prove that the victim was in fact in a position where the Defendant could sexually batter the victim as the victim testified by the Defendant placing his penis inside of the victim's mouth. Second, the testimony substantiated the fact that the victim had testified that her brother (J.B.) had walked into a room and seen the victim in the circumstances as described. See attached Trial Transcript at 120-121. Therefore, J.B.'s testimony was "evidence tending to prove ... a material fact." Sliney v. State, at 286. And, the probative value of that testimony certainly outweighed the "danger of unfair prejudice" against the Defendant Id. Therefore, counsel's actions in regard to that testimony being admitted were neither deficient nor prejudicial.

Resp. Ex. HH at 197-98. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. LL. Upon thorough review of the record and the applicable law, the Court finds that the state court's decision to

deny Petitioner's claim is neither contrary to nor an unreasonable application of <u>Strickland</u>, and it is not based on an unreasonable determination of the facts given the evidence presented to the state court.

Further, to the extent Petitioner argues the state court failed to address his claim that Detective Dicks' testimony that J.B. "told [her] he did recall an incident between or that he saw a partial of an incident between his father and his sister" amounted to a <u>Giglio</u> violation, Doc. 1 at 82, that claim is also without merit. J.B. testified he saw his father and sister in a compromising position and that he told the detective about what he saw. Thus, Detective Dicks' testimony was not false, and counsel was not ineffective for failing to challenge it. Ground Ten is due to be denied.

### k. Ground Eleven

While not a picture of clarity, Petitioner appears to argue that the trial court erred in denying his postconviction motion to disqualify the Honorable Wesley Douglas, the trial judge who issued the orders denying his Rule 3.850 motion.[10] Doc. 1 at 88. In support of that claim, Petitioner argues Judge Douglas included false, prejudicial statements in his orders of denial; and Petitioner points to numerous statements and findings in the orders and attempts to

---

[10] In 2015, the trial judge who presided over Petitioner's trial and sentencing, the Honorable Paul S. Bryan, recused himself from Petitioner's case and any matter in which Petitioner is involved, and Judge Douglas was assigned to the case.

refute them with additional facts and his own version of events. <u>Id.</u>

About four months after Judge Douglas, on remand, entered his second order denying ground two of Petitioner's Rule 3.850 motion, Petitioner filed a pro se motion to disqualify Judge Douglas based on "false statements in a judicial rendition within the case, in two denial orders." Resp. Ex. EE at 623.

The trial court denied the motion to disqualify as follows:

> In the instant motion, the Defendant seeks to have the undersigned disqualified from presiding over the Defendant's criminal case. A motion for disqualification of a trial judge is cognizable pursuant to Florida Rule of Judicial Administration 2.330. Rule 2.330 provides that "[a] motion to disqualify shall be filed within a reasonable time not to exceed 10 days after discovery of the facts constituting the grounds for the motion and shall be promptly presented to the court for an immediate ruling." FL ST J ADMIN Rule 2.330(e).

> The Defendant's claim for disqualification cites two orders entered by the undersigned denying the Defendant's "Amended Motion for Post Conviction Relief." The Defendant claims that each denial order contained false statements and that the entrance of these denial orders has created "objective fear of unfair judicial actions … that constitute felony violations in the State of Florida..." Motion at 1.

> The two denial orders that the Defendant references are the "Order Denying Amended Motion for Postconviction Relief" and the "Order Denying Argument Two of the Defendant's Amended Motion for Postconviction Relief," entered by this Court on July 13, 2015, and May 3, 2016, respectively. As such, the Defendant's instant motion for disqualification, filed on September 23, 2016, is untimely as it was filed well

> beyond the 10-day limit for filing a motion for
> disqualification based upon the entrance of these
> orders.
>
> Therefore, the instant motion must be denied.
>
> Wherefore, it is **ORDERED**:
>
> The "Defendant's Demand Motion for Judge
> Recusal due to Judicial Actions Invoking Chapter 18,
> United States Code, Section 242, Documenting False
> Statements in a Judicial Rendition within the Case, in
> 2 Denial Orders" is **DENIED as untimely**.

Resp. Ex. EE at 631. Petitioner appealed the trial court's denial, and the First

DCA combined the appeal with Petitioner's pending appeal of the trial court's

second order denying ground two of Petitioner's Rule 3.850 motion. Id. at 638.

The First DCA per curiam affirmed the trial court's order denying the motion

to disqualify without a written opinion. Resp. Ex. HHH.

To the extent Petitioner contends that the state court erred in finding

that his motion to disqualify was untimely, such allegation is purely an issue of

state law and not cognizable on federal habeas review. Indeed, a state's

interpretation of its own laws or rules provides no basis for federal habeas relief,

as no federal constitutional question is raised. Carrizales v. Wainwright, 699

F.2d 1053, 1055 (11th Cir. 1983). Nevertheless, even if this claim were properly

before the Court, it is without merit because the state court's rejection of

Petitioner's motion to disqualify was not contrary to or an unreasonable

application of clearly established federal law. And it was not based on an

41

unreasonable interpretation of the facts in light of the evidence presented in the state court proceedings. Ground Eleven is due to be denied.

### l. Ground Twelve

Petitioner contends his trial attorney was ineffective for failing to object to 35 allegedly improper statements the prosecutor made during opening and closing arguments. Doc. 1 at 97. Petitioner raised this claim as ground two of his Rule 3.850 motion. Resp. Ex. HH at 57-64. The trial court summarily denied this claim, along with Petitioner's other fifteen grounds for relief. Id. at 190-94. However, as mentioned, the First DCA reversed and remanded the trial court's initial denial of this claim, finding the trial court "may either grant an evidentiary hearing, or enter summary denial a second time and attach portions of the record that conclusively refute [Petitioner's] allegations." Resp. Ex. LL.

In compliance with the First DCA's directive, the trial court issued a second order summarily denying ground two. Resp. Ex. YY. The trial court found the following, in relevant part:

> In the instant motion, the Defendant cites to numerous portions of the trial transcript alleging that each citation reveals a statement made by the prosecutor that constitutes an inappropriate statement that should have been objected to by his defense counsel. . . . [T]he Defendant's claim that counsel was ineffective for failing to object to the plethora of prosecutorial statements cited to in the instant motion is without legal merit as not one single prosecutorial statement cited by the Defendant in Argument Two of the instant motion was improper.

42

All of the statements made by the prosecution that constitute the alleged misconduct were in fact statements made by the State. Also, the record substantiates the claim that counsel did not object to these statements. However, the statements made by the prosecution were not inadmissible or otherwise inappropriate statements. The Defendant's underlying claim is that counsel should have objected to certain statements made by the prosecution in opening statements and closing arguments because the evidence and testimony on the record did not substantiate the prosecution's statements. This claim is directly refuted by the record as each and every statement made by the prosecution that the Defendant challenges is in fact substantiated by the evidence and testimony on the record as this Order discusses; and the portions of the record are attached to substantiate each claim made by the prosecution. Thus every factual claim made by the Defendant is refuted. Additionally, the Defendant includes a few legal arguments as well related to some arguments made by the prosecutor. Each one of these claims is addressed as well and refuted as being without ·legal merit. "We have previously explained that counsel cannot be deemed ineffective for failing to object to a fair comment which is based on the evidence presented during the trial." Valentine v. State, 98 So. 3d 44, 55 (Fla. 2012).

Assuming, arguendo, that somehow one or more of the statements cited to is deemed legally or factually inappropriate, this Order explains that the Defendant cannot demonstrate a prejudice that, but for the alleged misstatement, the "result of the proceeding would in all probability be different; that is, he has not demonstrated a probability sufficient to undermine our confidence in the outcome" of the jury trial given the Strickland standard, because of the totality of the evidence against the Defendant. See Simmons v. State, 105 So. 3d 475, 490 (Fla. 2012). All of the evidence and law against the Defendant refute both the claims of

> deficiency and prejudice in the instant motion as
> discussed below in great detail.

Resp. Ex. YY. The trial court then thoroughly addressed each alleged impermissible prosecutorial statement in the confines of the two-part Strickland standard.[11] Id. The First DCA per curiam affirmed the trial court's second summary denial without a written opinion. Resp. Ex. BBB.

To the extent that the First DCA affirmed the trial court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. A reviewing court must evaluate allegedly improper comments in the context of both the prosecutor's entire argument and the trial as a whole, because "[c]laims of prosecutorial misconduct are fact-specific inquiries which must be conducted against the backdrop of the entire record." United States v. Hall, 47 F.3d 1091, 1098 (11th Cir.1995); accord United States v. Young, 470 U.S. 1, 11 (1985) ("[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by doing so can it be determined whether the prosecutor's conduct affected the fairness of the trial.").

After reviewing the prosecutor's arguments in context, the Court finds

---

[11] For the sake of brevity and judicial economy, the Court declines to quote the trial court's fifty-page order as it pertains to each individual statement and instead takes judicial notice of the trial court's findings.

that the prosecutor's comments made during opening statements and closing arguments were not improper, but rather were a summary of the evidence and a recitation of the reasonable doubt standard. Resp. Ex. F at 26-30, 240-49, 260-67. As such, counsel was not deficient for failing to object. Nevertheless, the state presented an ample amount of evidence that Petitioner committed these offenses, and thus, he cannot demonstrate that but for counsel's alleged deficiency, the outcome of his case would have been different.

Accordingly, upon review of the record, this Court finds that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Ground Twelve is due to be denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED** and this case is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of

appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[12]

   **DONE AND ORDERED** at Jacksonville, Florida, this 13th day of October, 2020.

*Timothy J Corrigan*

   TIMOTHY J. CORRIGAN
   United States District Judge

Jax-7

C:   Rodger N. Butler, #12252
   Jennifer J. Moore, Esq.

---

   [12] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.

46